UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.O.P.,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>TONYA ANDREWS, FACILITY ADMINISTRATOR OF GOLDEN STATE ANNEX, et al.,<br><br>　　　　Respondents. | Case No.: 1:25-cv-00721-KES-SKO (HC)<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENTS' MOTION TO DISMISS (Doc. 9), AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>[21-DAY OBJECTION DEADLINE] |

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He is represented in this action by Mariel Villarreal, Esq., of the California Collaborative for Immigrant Justice.

Petitioner filed the instant petition on June 12, 2025. (Doc. 1.) On July 24, 2025, Respondent filed a motion to dismiss the petition. (Doc. 9.) On August 21, 2025, Petitioner filed an opposition. (Doc. 12.) Respondent did not file a reply.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be immediately released, or alternatively, provided a bond hearing before an immigration judge ("IJ") where the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will recommend Respondent's motion to dismiss be granted, and the petition be denied.

## I.   BACKGROUND

Petitioner is a native and citizen of Honduras. (Sealed Exhibit 2.) He entered the United States without inspection on an unknown date. (Sealed Exhibit 2.) Records show Petitioner's parents have no status in the United States. (Sealed Exhibit 2.) In 2012, Petitioner was convicted in the Los Angeles County Superior Court of voluntary manslaughter and sentenced to sixteen years in prison. (Sealed Exhibit 2.)

Upon release from prison on September 22, 2022, the Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest and a notice to appear for removal proceedings. (Doc. 8-1 at 15.) Based on his criminal history, DHS charged him with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Sealed Exhibit 2.) On that date, Petitioner was detained under the mandatory detention provisions in § 236 of the INA and has been in continuous custody since then.

On September 22, 2022, Petitioner filed a request for a bond hearing before an Immigration Judge. (Sealed Exhibit 3.) Petitioner then withdrew his request. (Sealed Exhibit 3.)

On March 6, 2023, Petitioner sent a request for release to ICE. (Sealed Exhibit 3.) On March 8, 2023, ICE reviewing officers denied the request, finding Petitioner is subject to mandatory detention. (Doc. 9-1 at 3.)

On January 23, 2023, an immigration judge denied Petitioner's applications for relief and ordered him removed to Honduras. (Doc. 9-1 at 3; Sealed Exhibit 4.) On July 18, 2023, the Bureau of Immigration Appeals ("BIA") affirmed the decision. (Sealed Exhibit 5.)

On October 13, 2023, Petitioner filed a request to reopen removal proceedings with the BIA. (Sealed Exhibit 6.) On January 25, 2024, the BIA denied the motion. (Sealed Exhibit 6.) On February 23, 2024, Petitioner petitioned for review of the BIA's denial in the Ninth Circuit Court of Appeals along with a motion for stay of removal. See O.P. v. Bondi, Case No. 24-980. Pursuant to Ninth Circuit General Order 6.4(c)(1), removal proceedings were stayed pending judicial review. Approximately 17 months later, on June 24, 2025, the Ninth Circuit denied relief from removal. (Doc. 9-1 at 3.) As a result, the stay of removal was lifted.

## II.   DISCUSSION

### A.  Motion to Dismiss

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  The provisions of Rule 4, which are applicable to § 2241 petitions under Rule 1(b), provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."  The Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

### B.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). See Demore v. Kim, 538 U.S. 510, 517 (2003).

//

//

C.  <u>Mandatory Detention under 8 U.S.C. § 1226(c)</u>

Petitioner has been detained for approximately 3 years pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

> (c) Detention of criminal aliens
>
>> (1) Custody
>>
>>> The Attorney General shall take into custody any alien who--
>>>
>>> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>>>
>>> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>>>
>>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year,
>>>
>>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
>>>
>>> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>>>
>>> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>>
>> . . . .
>>
>> (4) Release
>>
>>> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226 (West).

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." As noted above, Section 1226(c) states that the Attorney General "shall take into

custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). The Supreme Court also noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. The Attorney General has not decided that release is necessary for witness-protection, nor has the Attorney General determined that Petitioner will not pose a danger or flight risk. Therefore, statutorily, § 1226(c) mandates detention.

Petitioner contends that, although the statute mandates detention, his detention without a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights. The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

5

It is undisputed that Petitioner's detention is mandatory under § 1226(c), and he does not meet any of the conditions for release pursuant to § 1226(c)(2). Petitioner nonetheless claims that his detention has become so unreasonably prolonged that due process requires he be provided an individualized bond hearing. The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as-applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as-applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231. Section 1231 governs detention following a final order of removal. The Zadvydas Court read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is "reasonably necessary to secure [the alien's] removal." Id. at 699. The detention at issue in Zadvydas, however, is materially different from the present case. In Zadvydas, the aliens challenging their detention following final orders of deportation were those for whom removal was "no longer practically attainable." Id. at 690. The civil confinement was not limited, "but potentially permanent." Id. at 691. Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." Id. at 697. Here, on the other hand, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), contending that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. The Court also noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to

6

what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. The majority, however, held that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31.

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which noted that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance in holding that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir.2015). Petitioner contends he is entitled to a bond hearing under this six-month bright line rule. In Jennings v. Rodriguez, the Supreme Court rejected the six-month bright line rule. The Supreme Court determined that the Ninth Circuit had misapplied the doctrine of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The Jennings Court interpreted § 1226(c) as having a "definite termination point" to the length of detention – the "conclusion of removal proceedings" – and remanded the case to the Ninth Circuit to consider the constitutional arguments on their merits, and held that § 1226(c) on its face authorized detention without a bond hearing. Id. at 304. The Court did not, however, provide guidance on whether an alien could assert an as-applied challenge under the Fifth Amendment due process clause.

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any

process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

The Ninth Circuit has also noted the common use of the Mathews test and has assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate. Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S.

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has now been detained approximately 3 years. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's 3-year detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. The Ninth Circuit has also held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Thus, the factor at first glance weighs in favor of Petitioner. In Rodriguez Diaz v. Garland, however, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. According to the Ninth Circuit, detentions longer than six months were considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all."

In Rodriguez Diaz, the petitioner had received a bond hearing after he was detained. Id. at 1207. Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond hearing. This lack of due process weighs in favor of Petitioner. The Court notes, however, that Petitioner had requested a bond hearing before an IJ, but he inexplicably rescinded his request prior to the scheduled hearing. The IJ honored Petitioner's request and Petitioner remained in detention without bond release review. Notwithstanding Petitioner's request for rescission, his private interest in being free from prolonged detention of 3 years continues to weigh in his favor.

The Court also considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. Rodriguez Diaz, 53 F.4th at 1208; Demore, 538 U.S. at 530-31. Here, Petitioner was detained for four months before an Immigration Judge ordered him removed. Arguably, most of the detention period from February 17, 2023, to the present were due to Petitioner's appeals and motion to reopen. Petitioner's appeal to the Ninth Circuit on February 23, 2024, stayed all efforts at removal until the appeal was denied on June 24, 2025. This 17-month period comprised nearly half of the detention period. On the other hand, during the 4-month period from January 23, 2023, to February 17, 2023, and July 17, 2023, to October 13, 2023, nothing apparently prevented the Government from removing Petitioner. Thus, while the Government bears some blame for the length of detention, Petitioner's own actions caused most of the detention period. Petitioner's private interest in being free from prolonged detention is therefore diminished by his own actions.

When considering the length of detention, courts have looked not only at the overall period, but also at "how long detention is likely to last." Gonzalez v. Bonnar, 2019 WL 330906, at *5 (N.D. Cal. 2019). In German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 210-11 (3d Cir. 2020), the court inquired on the reasonableness of the length of detention. The Third Circuit stated that "[t]he most important factor is the duration of detention"; but in evaluating the duration of detention, the first factor to be considered is "*whether the detention is likely to continue*." Id. at 211 (emphasis added). Here, removal is imminent. The IJ ordered Petitioner's removal, Petitioner's appeals to the BIA were denied, and significantly, the Ninth Circuit has recently decided the appeal against him. Thus, all reasonably viable avenues of relief are now exhausted, and there are no apparent obstacles standing in the way of Petitioner's removal to Honduras and release from his current detention, once the Ninth Circuit issues its mandate. Of course, Petitioner is free to file further actions as he deems fit, but further detention would be due to Petitioner's own actions. The proverbial keys to release are in his own pocket.

Against Petitioner's private interest in being free from detention, the Court must consider the government's stated interests in protecting the public from a risk of danger and risk of flight to avoid removal. Petitioner has an extensive criminal history. He was a gang member from his youth and has a history of violent crime including the use of firearms, culminating with a conviction for voluntary

10

manslaughter. (Doc. 1 at 11-13; Sealed Exhibit 1.)  He admits he consistently engaged in criminal activity since he was very young. (Doc. 1 at 11-13.)  The Ninth Circuit has recognized safeguarding the community as a legitimate purpose of detention pending removal proceedings. See Prieto-Romero v. Clark, 534 F.3d 1053, 1062-65 (9th Cir. 2008).

In sum, as to the first Matthews factor, Petitioner's lengthy detention is a significant consideration weighing in his favor. However, this consideration is diminished by Petitioner's own actions in causing much of the prolonged detention period. Moreover, removal is now imminent. In addition, Petitioner has an extensive criminal history. For these reasons, the Court finds the government's interest in protecting the public and in assuring Petitioner's presence for removal outweighs Petitioner's interest in being free from continued detention.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of the government. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Here, Petitioner has received due process in the form of appeals of his removal order and his petition for review before the Ninth Circuit.  Although he has not received a formal bond hearing before an IJ or judge, Petitioner demanded a bond hearing before an IJ but later withdrew his own request.

DHS has also conducted a custody status review finding Petitioner to be a risk of danger to the community and a flight risk. Given Petitioner was a gang member who admittedly relapsed into criminal activity every time he was free, the Government's interest in protecting the public is high, and the risk of an erroneous deprivation of Petitioner's interest is low. For the same reason, the probable value of a bond hearing is low, especially when considering Petitioner's removal is imminent. Thus, the second factor weighs in favor of the government.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal, Demore, 538 U.S. at 531, and in protecting the public from danger, Prieto-Clark,

534 F.3d at 1062-65. Here, mandating a bond hearing would only lengthen Petitioner's detention as his removal is imminent. Furthermore, the government's asserted interest in protecting the public is strong based on Petitioner's extensive criminal history, and mandating a bond hearing at this juncture would undermine the government's asserted interest in effecting removal. Thus, the government's interest again outweighs Petitioner's interest.

In sum, the three Mathews factors weigh in favor of the government's interest in further detention pending Petitioner's removal in the near future. The Court finds that Petitioner's continued detention without mandating a bond hearing before an IJ at this time does not violate his Fifth Amendment due process rights and will recommend denying the petition.

### III.     RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS the motion to dismiss be GRANTED and the petition be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule

4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **September 10, 2025**              /s/ *Sheila K. Oberto*
                                     UNITED STATES MAGISTRATE JUDGE